DAVIDSON COUNTY et al.

*v.*

JAMES RANDALL.

(*Nashville,* December Term, 1956)

Opinion filed March 8, 1957.

WILLIAMS, HARWELL, HOWSER & THOMAS, Nashville, for plaintiff in error.

ELMER D. DAVIES, JR., County Attorney, Nashville, for defendant in error, Davidson County.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is an appeal from a conviction of contempt by Randall for allegedly violating an injunction issued pursuant to a final decree of the Chancery Court.

On May 23, 1955, a suit was filed in the Chancery Court against the plaintiff in error alleging in substance that he as the owner of certain property on Idlewild Avenue in the said County, was violating certain zoning ordinances of the County in that he was removing and selling soil on a commercial basis from the rear of the property to various contractors throughout the community and that this property was in a Residential B Zoning District.

It was alleged and shown by numerous exhibits attached thereto that various complaints had been made

over a period of a year preceding the filing of this suit to Randall about the excavating and hauling soil from the rear of his property. This bill and exhibits thereto also show that for a year prior to the filing thereof he had been contacted many times and apparently had promised to desist from violating this zoning ordinance but had failed to do so and as a result of his failure to comply with his promises in violating this ordinance the bill was filed against the plaintiff in error.

The plaintiff in error in turn filed an answer. On this bill and answer and exhibits attached to the bill a permanent injunction was issued by the Chancery Court. Among other things it was alleged in the bill that the plaintiff in error had created ''on the rear of his property, a huge pit from which he was removing soil and selling it to various contractors, also, the defendant had placed on the front of his property a signboard advertising dirt for sale.'' It was also averred in this bill ''that the use of said property, as it is being used at present, will work irreparable injury to the health, safety and morals, convenience, further prosperity and welfare of the present and future inhabitants of Davidson County, Tennessee, and that unless enjoined by this Court, the defendant will continue with said use of the property in question.''

As a result of this bill the defendant was permanently enjoined in words and figures as follow:

''It is, therefore, Ordered, Adjudged and Decreed by the Court that the defendant be permanently enjoined from the removal and sale on a commercial basis of soil from his property located on the southwesterly side of Idlewild Avenue in the Eleventh Civil District of Davidson County, Tennessee.''

This decree was entered on June 20, 1955 and in a further provision of the decree gave the plaintiff in error five days within which to bring his property in compliance with the resolution that he admittedly was violating.

On August 30, 1956, a petition was filed in this cause in which it was alleged that the injunction above referred to had been entered and that subsequent thereto the defendant had "and particularly on August 8th, August 9th, August 21st, August 23rd and August 27th, 1956, has caused to be removed large quantities of soil from his said property by commercial dirt haulers. Complainants charge that the said removal of soil was in wilful disobedience of said injunction, and in contempt of Court; * * *" This petition was answered denying that the defendant had violated the injunction. Proof was heard and the Chancellor found that the defendant had wilfully violated the injunction and fined him $50 and sentenced him to 2 days in jail.

On this appeal, according to the plaintiff in error,

"No question remains to be considered except whether to give away dirt without selling it on a commercial basis could have been a violation of the injunction."

■ If an alleged contempt for violation of injunction is issued in a suit for the violation of an injunction by a final decree and then the contemnor is found guilty of contempt he appeals directly to this Court. *Metcalf v. Eastman,* 190 Tenn. 206, 288 S.W.2d 490. The conviction here, as said, was from a permanent injunction entered in a suit which was merely for injunctive purposes which had become final a year prior to the petition for contempt.

The question was asked at the Bar, and frequently occurs in cases of the kind, as to what is forbidden by an injunction: whether or not the things that are forbidden are to be determined by the plain language of the injunction, or what. The answer to this question is:

"The matter is to be determined, not from a contemporaneous verbal construction of the decree given by the judge, but from the injunction itself, construed in the light of the pleadings and the subject matter of the suit." 28 Am. Jur., p. 507, Sec. 333.

The contemnor (plaintiff in error) takes the position here, that under the language of the injunction heretofore quoted, that he is only prohibited from the sale of dirt upon a commercial basis and in the absence of a showing that he has sold dirt on a commercial basis no conviction can rest under this injunction.

■ When one violates an injunction as here alleged to have been violated the contempt is what is known as criminal contempt and the laws ordinarily applicable in criminal prosecutions apply. *State ex rel. Anderson v. Daugherty,* 137 Tenn. 125, 191 S.W. 974.

■■ The defendant "is presumed to be innocent and must be proved to be guilty beyond a reasonable doubt." *State v. Daugherty, supra.* At the same time the rule applicable in criminal cases that the presumption of innocence after conviction vanishes and the finding below raises a presumption of guilt which the accused must overcome. As said above though the plaintiff in error takes the position that there is no evidence here to indicate his violation of the injunction.

In this type of case, as said, the defendant's guilt must be established beyond a reasonable doubt.

"But, while the injunction must be implicitly obeyed, it is the spirit and not the strict letter of the mandate to which obedience is exacted, and complainant failing to prove a violation of this to the satisfaction of the court, the rule for an attachment for contempt will be discharged." High on Injunctions, 4th Edition, Sec. 1419.

In Section 1433 of this work this very reasonable and logical statement is made:

"But where the mandate of the court has been violated in spirt as well as in letter, the court will not permit the general terms of the writ to be controlled or restricted by reference to the particular nature of the grievance. *Nor will the court permit defendants to evade responsibility for violating an injunction by doing through subterfuge that which, while not in terms a violation, yet produces the same effect by accomplishing substantially that which they were enjoined from doing.*" Emphasis ours.

And at Section 1446 on page 1455, this author very aptly makes the statement which is particularly appropriate in this case.

"In deciding whether there has been an actual breach of an injunction it is important to observe the objects for which the relief was granted, as well as the circumstances attending it. And it is to be observed that *the violation of the spirit of an injunction,* even though its strict letter may not have been disregarded, is a breach of the mandate of the court." (Emphasis ours).

The author then notes that the opposite of this statement is likewise true, in these contempts for breach of the injunction, to the effect that even though literally an injunction might have been breached if it is not done so in spirit then there is no violation. These statements which we have quoted from this learned text writer are particularly appropriate, logical and apt in this particular case as will hereinafter fully appear upon the relation of the facts appearing on this citation.

We related above the allegations of the original bill wherein the injunction was entered for which this is an alleged violation. It is clear from this bill (it was answered by the defendant and he was presumed to have full knowledge of its every allegation) that he knew that the injunction was because he was violating a zoning ordinance. This man's property was located in a residential area. The gravamen of the allegations show or are to the effect that the purpose of the injunction (by the pictures that were introduced) was to stop his digging this large hole out behind his house with these commercial dirt hauling trucks, bulldozers, etc., and then driving up the side of this property into the street. Its purpose obviously was not to prevent the plaintiff in error from earning a profit by selling his soil but was to try to preserve the district in the shape of a residential district and not a commercial district. This theory of the zoning ordinance was being violated by these large commercial trucks, bulldozers, etc., digging this dirt up behind the man's house on this street and then driving the trucks out in the street and hauling the dirt away.

There was apparently no violation of the injunction from June, 1956, until August, 1956, when there was a resumption of the digging and hauling of the dirt and it

being carried out regularly and through the use of the heavy trucks and equipment by the same contractor and through the same means as was done prior to the issuance of the injunction. This was being done a year before filing of the injunction bill when the defendant was tried to be persuaded not to do this because it was a violation of the zoning ordinance.

The record shows that this same commercial dirt hauler who hauled this dirt prior to the issuance of the injunction was likewise removing this dirt in August of 1956, when this man was cited for violating this injunction.

These people testify that they were not selling the dirt. The contractor testifies that he was not buying it though he says he was buying dirt from this man at about a four mile distance from this location. The plaintiff in error testifies that he did not tell the commercial dirt carrier that there had been a grace period provided for him when the injunction was issued, but to the contrary the dirt contractor or commercial dirt hauler does testify that the plaintiff in error told him that he had a grace period in there. Clearly from this there could be the inference that the commercial dirt hauler thought that from what had been said to him by the plaintiff in error that he had a grace period in which to get this dirt out.

In addition to these things on the hearing for the violation of this injunction there were also filed pictures of this dirt hole and the machines used in digging this hole in this property and hauling this dirt out by these commercial dirt hauling vehicles. These pictures were almost identical with the pictures that were offered and filed

with the original bill back in 1955. In other words the pictures of what was happening before the injunction was issued and what was happening to cause the petition for contempt to be filed, were one and the same thing. Clearly under these things the Chancellor upon seeing them and hearing this had ample material evidence within which to conclude that there was a violation of this injunction.

There of course is no proof that this dirt was being sold for so much a yard or for anything but it is clear that the removal of this dirt subsequent to this injunction as it was being removed was a clear violation of the spirit of the injunction. If the plaintiff in error wanted to take this dirt out he could have petitioned the court for this permission. For the reasons hereinabove expressed the decree below must be affirmed.