IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2017 Session

## FAMILY TRUST SERVICES, LLC, ET AL. v. REO HOLDINGS, LLC, ET AL.

### Appeal from the Chancery Court for Davidson County
No. 15-780-BC      Ellen H. Lyle, Chancellor

―――――――――――――――――――――――

### No. M2016-02524-COA-R3-CV

―――――――――――――――――――――――

This appeal of a conviction for criminal contempt arises out of a civil suit brought by business owners against the owners and employees of a competing business for fraud in the use of the tax-sale and redemption process for real property. The trial court issued a temporary injunction, prohibiting defendants from, *inter alia*, recording deeds in real estate transactions without an authentic notary seal on the documents and requiring defendants to notify the court and opposing counsel of any documents they intended to record in the Register's Office. Appellant, the owner of the business which was the subject of the injunction, subsequently formed a trust in which Appellant retained the right to direct the distribution of income and principal and to amend, revoke, or terminate the trust. The trustee of the trust was conveyed real property in trust and recorded the deed without the notice required by the injunction. The property was subsequently sold, and, at Appellant's instruction, a portion of the proceeds of sale used to pay Appellant's legal fees for a related proceeding; the trial court held that, in so doing, the Appellant willfully and for a bad purpose violated the injunction, and held him in contempt. On appeal, Appellant argues that the evidence is insufficient to support the conviction. We have reviewed the record and conclude that there is evidence to support the contempt conviction beyond a reasonable doubt and accordingly affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

William T. Ramsey, Thomas H. Dundon, and J. Isaac Sanders, Nashville, Tennessee, for the appellant, Charles Edward Walker.

Eugene N. Bulso and Paul J. Krog, Nashville, Tennessee, for the appellees, Family Trust Services, LLC, Steven D. Reigle, Regal Homes, Co., Billy G. Gregory, John R. Sherrod, III.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Alexander S. Rieger, Deputy Attorney General, for the Office of the Attorney General and Reporter.

## OPINION

### I.  FACTUAL AND PROCEDURAL HISTORY

This appeal arises out of a suit filed by Family Trust Services, LLC, and Billy Gregory, who are in the business of buying and/or redeeming real property sold at delinquent tax sales.  The Plaintiffs filed suit against a competitor, REO Holdings, LLC, its owners Charles Walker and Jon Paul Johnson, and its employees Julie Coone, Merdan Ibrahim, and Nationwide Investments, LLC.  Plaintiffs asserted claims for violations of the Racketeer Influenced and Corrupt Organizations Act and the Tennessee Consumer Protection Act; slander of title; fraud; violation of Tennessee Code Annotated section 30-2-712 (recording false affidavits); liability pursuant to Tennessee Code section 66-22-113 (failure to discharge the duties and obligations of a notary public); trespass and ejectment; and civil conspiracy.[1]  The Plaintiffs sought injunctive and declaratory relief, compensatory and punitive damages, and relief from judgments finalizing redemptions and quieting title to properties that were obtained by Defendants' alleged fraud.

The trial court granted Plaintiffs a temporary injunction on July 24, 2015, stating in pertinent part:

> The Plaintiffs have accused the Defendants of engaging in criminal acts of facilitating, assisting and/or forging signatures of notaries; committing perjury about the authenticity of real property documents; and aiding, abetting and/or committing fraud as to chain of title to real property.
>
> ***
>
> Before the Court is clear, unrebutted evidence that in the space of the year and one half Defendant REO has been acquiring tax sale redemption properties, signatures and notary seals on at least 10 instruments (quitclaim deeds, affidavits of heirship and assignments of lien) were forged on 5

---

[1] In the course of proceedings, Plaintiffs asserted additional causes of action for unfair competition, unjust enrichment, intentional interference with advantageous business relations, malicious prosecution, and theft of the right of redemption.

property transactions involving REO and its principals, Defendants Walker and Johnson. The five notaries, whose names and seals appear on property documents in this case, have filed declarations that these are forgeries.

The forgeries involve different notaries in different states, properties in various locations in Tennessee, with various grantors. The only common element in all the forgeries is that all of these various transactions involve Defendants REO, Walker and Johnson.

The Defendants do not dispute or contest the forgeries. Instead, they assert that they were unaware and were not involved in the forgeries and were recipients of forged documents.

***

. . .[T]he Court finds that the record in this case demonstrates a substantial likelihood of success on the merits by the Plaintiffs that the Defendants are not complying with the statutory electronic filing requirements of real property documents in conducting their business of acquiring tax sale properties; that noncompliance gives Defendants an advantage over their competition, the Plaintiffs, in the tax sale property marketplace; and that noncompliance poses substantial risk to the public welfare of the registration of forged real estate documents in the public record.

It is therefore ORDERED that upon the Plaintiffs posting a $5,000 bond, Defendants REO Holdings, LLC; Charles E. Walker; Jon Paul Johnson and their employees and agents, including but not limited to, Defendant Julie Coone and Merdan Ibrahim, are enjoined from:

(1) Recording, whether electronically or in person, any document with any Register of Deeds in the state of Tennessee until the Defendants have completed the two actions of (a) Defendants having in their possession a "wet seal" color coded notary seal and/or an embossed notary seal on the document they intend to file and (b) Defendants having filed a Notice, with this Court and copy to counsel, with appended thereto every document, from this day forward, the Defendants intend to record with any Register of Deeds in the State of Tennessee;

(2) Transferring or encumbering the real property identified in their Response to Plaintiffs' Interrogatory No. 3 and in Exhibit A to their Response to Plaintiffs' Interrogatory No. 3 without first obtaining leave from this Court;

3

(3) Withdrawing from the registry of any Court or from any Clerk & Master in the State of Tennessee funds paid to redeem any real property without leave of this Court; and

(4) Disposing of any documents, including any electronically stored information, relevant to this action.

The order was amended once by the court and once by agreed order to provide that the restrictions did not apply to documents recorded by "Team Title, Inc. or the Law Office of Charles Walker except to the extent that any such document transfers or assigns any interest in real property to any defendant . . ."

On March 3, 2016, the Plaintiffs moved the court to set an evidentiary hearing to determine whether Mr. Walker should be held in criminal contempt. Pertinent to this appeal, the motion alleged:

3. It appears that, from the time this Court filed its Temporary Injunction to the present, Mr. Walker and at least two of the other defendants, Jon Paul Johnson and Julie Coone, have been involved in a scheme to purchase real property in Davidson County in the name of at least two nominees, Joshua Lugo and Jamaal Boykin, rather than in Mr. Walker's name, in an effort to circumvent this Court's Order.

***

8. Similarly, on December 14, 2015, Jamaal L. Boykin, as trustee for something called the "For the All Amp Trust" purchased via Substitute Trustee's Deed property located at 4229 Laurenwood Drive, Antioch, Tennessee, 37013 for $96,000.[2] See Exhibit 8. This property is currently

---

[2] The deed conveying the Laurenwood Drive property to Mr. Boykin, as trustee, is titled "Substitute Trustee's Deed." The deed recites that the original trustee for the real property was Cumberland Title Company, which was conveyed a Deed of Trust to secure the payment of an indebtedness secured by the property; when the debtor defaulted in payment of the indebtedness, Shapiro & Ingle, LLC, was appointed as Substitute Trustee and proceeded to foreclose on the property in accordance with the terms of the Deed of Trust. The Substitute Trustee's Deed recites that at the foreclosure sale on December 10, 2015:

. . . the property was sold at public outcry to the highest and best bidder for cash at which time the said property was struck off and sold to Jamaal L. Boykin as Trustee For the All Amp Trust for the sum of $96,000.00, that being the highest and best bid offered; and,

WHEREAS, the purchaser, Jamaal L. Boykin as Trustee for the All Amp Trust, has complied with the terms of the sale by paying into the hands of the undersigned

listed for sale by defendant Jon Paul Johnson. Mr. Boykin, a licensed attorney, is believed to be the son of counsel for REO Holdings, LLC, Sheila Stevenson. On October 14, 2015, Mr. Boykin received a discharge in a Chapter 7 bankruptcy case (See Exhibit 9), making it unlikely that he had $96,000 of personal funds just two months later to purchase this property.

9. The record, thus, demonstrates that Mr. Walker electronically recorded one document (Exhibit 1) in violation of this Court's Temporary Injunction, and if he is the real party interest with respect to the other transactions listed above, he has recorded an additional seven (7) documents through various agents without providing the notice specified in this Court's July 24, 2015, Temporary Injunction. . . .

After a telephonic hearing on March 7, the court entered an order granting the motion, setting a hearing for May 16, 2016, and asserting that Mr. Walker willfully disobeyed the injunction by:

…(a) recording a Substitute Trustee's Deed with the Davidson County Register of Deeds on October 29, 2015, in violation of the Court's Memorandum and Order; (b) purchasing and selling real property in the names of third parties, including but not limited to Joshua Lugo and Jamaal Boykin, for the purpose of evading compliance with the Court's Order; and (c) recording, directly or through his agents, the documents listed below without first having complied with the Court's Memorandum and Order.

Specific to this appeal, the order characterized the following as "[t]he essential facts constituting the criminal contempt charge":

On December 14, 2015, Jamaal L. Boykin, as trustee for the All Amp Trust purchased via Substitute Trustee's Deed property located at 4229 Laurenwood Drive, Antioch, Tennessee, 37013 for $96,000. This property is currently listed for sale by defendant Jon Paul Johnson. Mr. Boykin, a

---

Substitute Trustee the expenses of the sale, the balance being applied upon said indebtedness for which property was sold.

NOW, THEREFORE, in consideration of the premises and the payment by Jamaal L. Boykin as Trustee For the All Amp Trust the sum of money so paid, receipt of which is hereby acknowledged, the undersigned, Shapiro & Ingle, LLP, a Tennessee limited liability partnership, as Substitute Trustee, does hereby grant, bargain, sell and convey to the said Jamaal L. Boykin as Trustee For the All Amp Trust, his/her/their/its successors and assigns, in fee simple forever, the property above mentioned and now further described as being in Antioch, County of Davidson, State of Tennessee[.]

licensed attorney, is the nephew of counsel for REO Holdings, LLC, Sheila Stevenson. On October 14, 2015, Mr. Boykin received a discharge in a Chapter 7 bankruptcy case. No notice was filed with this Court regarding this transaction.

By separate order, the court ordered Plaintiff's counsel to prosecute the charge of criminal contempt.

Prior to the hearing, Defendant REO Holdings, LLC, which had filed a petition under Chapter 11 of the Bankruptcy Code on February 29, 2016, filed a notice removing the case to bankruptcy court, and all proceedings in the business court were stayed; on Plaintiffs' motion, the bankruptcy court remanded the contempt proceedings for final disposition on June 15, 2016.

Following a hearing on July 26,[3] the trial court entered an order finding Mr. Walker guilty beyond a reasonable doubt of one count of criminal contempt; Mr. Walker was sentenced to two days in jail and fined $50.00. The court subsequently awarded attorney's fees of $23,821.00 and $2,049.00 in costs relating to the prosecution of the proceeding. Mr. Walker appealed to this court, and the trial court stayed Mr. Walker's jail sentence pending the resolution of the appeal; he challenges the sufficiency of the evidence to establish that he violated the injunction, or, alternatively, whether the evidence establishes that his violation was willful.

## II.   ANALYSIS

The order holding Mr. Walker in contempt stated:

> [T]he Court finds beyond a reasonable doubt that in December of 2015, to purposefully evade compliance with the July 24, 2015 Order, Defendant Walker established the All Amp Trust. Defendant Walker entered into the All Amp Trust Agreement on December 2, 2015 as the Settlor, with Jamaal L. Boykin serving as Trustee.
>
> The evidence at the July 26, 2016 trial established that as Settlor of the All Amp Trust, Defendant Walker was granted the rights: (1) to distribute income or principal to any person or organization as he directed; (2) to pay such amounts or dispose of the net income and principal of the Trust as he directed the Trustee from time to time; (3) to reserve the right at any time and from time to time to amend, alter, revoke or terminate the

---

[3] The record contains an excerpt of the transcript of the July 26 hearing; the only testimony in the excerpt is that of Mr. Boykin.

6

Trust, in whole or in part, or any provisions, by an instrument in writing signed by Defendant Walker and delivered to the Settlor within the lifetime of Defendant Walker; and (4) on the revocation of the Trust, the Trustee was to pay or transfer to Defendant Walker, or as Defendant Walker may direct in the instrument of revocation, all of the trust funds.

Trial Exhibit 23 is a copy of a Substitute Trustee's Deed. It establishes that Jamaal Boykin, as Trustee for the All Amp Trust, purchased the 4229 Laurenwood Drive, Antioch, Tennessee property in December of 2015. As Trustee for the All Amp Trust and agent for Defendant Walker, Jamaal Boykin recorded a Substitute Trustee's Deed conveying the Laurenwood Property to Jamaal Boykin as Trustee for the All Amp Trust.

In connection with the recording of Trial Exhibit 23 by his agent, Defendant Charles E. Walker did not comply with paragraph 1 of the July 24, 2015 Order. Defendant Walker did not notify the Court or opposing Counsel of the recording of the Substitute Trustee's Deed. Trial Exhibit 5 establishes that the All Amp Trust, directed by Defendant Walker, sold the Laurenwood Property in March 2016 with the All Amp Trust receiving $137,760.68 from the sale.

The Court additionally finds from the undisputed testimony of Attorney Jamaal L. Boykin, the Trustee, that the All Amp Trust consisted of approximately $137,760.68 from the sale of 4229 Laurenwood Drive, Antioch, TN 37013. Additionally, the testimony of Attorney Boykin established that subsequently Defendant Walker directed approximately $10,000 to be withdrawn from the Trust for the payment of legal fees related to Defendant Walker's bankruptcy.

From the foregoing evidence the Court finds beyond a reasonable doubt that through his role as Settlor of the All Amp Trust, Defendant Walker used the Trust to evade the July 24, 2015 Order, and the evidence establishes that Defendant Walker, beyond a reasonable doubt, violated the July 24, 2015 Order willfully and for a bad purpose.

Mr. Walker does not contend that the injunction was unlawful or ambiguous; he asserts that the evidence is insufficient to establish that he violated the injunction, or alternatively, that he did so willfully. Specifically, he argues that there is insufficient proof to establish beyond a reasonable doubt that the Substitute Trustee's Deed was recorded by an agent of Mr. Walker because "Mr. Boykin's testimony did not establish, beyond a reasonable doubt, that he directed the recording of the Substitute Trustee's Deed, and the prosecution presented no other evidence on this point."

The record shows that the injunction was issued on July 24, 2015, and Mr. Walker established the trust on December 2, in an instrument titled "Trust Agreement All Amp Trust," which identified himself as Settlor and Jamaal L. Boykin as Trustee. No other beneficiary is identified, and Mr. Walker and Mr. Boykin are the only parties to the agreement. Article I of the Trust Agreement states that the "Settlor is transferring the property described in Schedule A to Trustee, in Trust, as the initial trust principal." Article III is titled "Distributions During Settlor's Lifetime" and states that the "Trustee shall distribute income or principal to any person or organization as directed by Settlor." In Article IV, Mr. Walker reserves the right to amend, alter, revoke, or terminate the trust at any time; the article provides that "On the revocation of this trust in its entirety, the Trustee shall pay or transfer to the Settlor, or as the Settlor may direct in the instrument of revocation, all of the trust fund." The trust agreement bears Mr. Walker's signature as Settlor, and then reads as follows:

TRUST AGREEMENT All Amp Trust

**Schedule A Property Transferred to Trust**

_____

$250 Cash

[next page:]

Schedule "A"

4229 Laurenwood Drive, Antioch TN 37013

Mr. Boykin testified that, although the Substitute Trustee's Deed conveying ownership of the Laurenwood Drive property ("the property") recited that he purchased the property, he was not the purchaser, and did not know who purchased the property or where the purchaser got the funds to purchase the property. He testified that he received the substitute trustee's deed via a commercial delivery service and, while he could not recall the specifics surrounding the recording of the deed, he caused it to be recorded.[4] He also testified that he received a check for $14,000 from the substitute trustee, which he "guess[ed was] an overpayment of some sort." He testified that the property was a "fixer upper"; that trust funds were used to improve the property; and that after the

_____

[4] Mr. Walker contends that Mr. Boykin "testified that he had absolutely no recollection regarding how the Substitute Trustee's Deed came to be recorded." However, Mr. Boykin testified that he "got the deed through FedEx, I believe, with the check. . . . I don't know who I handed it off to, but it would have been handed off to someone in the office to go record," as was his typical practice, and that "[i]t could be Stephanie; it could be Jennifer[; and] Maxine works with us as well."

8

property was sold in March 2016 and the proceeds deposited in the trust's bank account, he was directed to use some of the funds to pay Mr. Walker's bankruptcy attorney's fees.

The willful disobedience of a lawful court order is punishable as criminal contempt. Tenn. Code Ann. § 29-9-102(3).[5] "[I]n criminal law, "willfully" connotes a culpable state of mind. In the criminal context, a willful act is one undertaken for a bad purpose." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 357 (Tenn. 2008) (citing *Bryan v. United States,* 524 U.S. 184, 191 (1998); *State v. Braden,* 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993) (upholding an instruction stating that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids")). The person accused of criminal contempt is presumed to be innocent, and the prosecution bears the burden of proving guilt beyond a reasonable doubt. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006) (citing *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966)). "A guilty verdict removes the presumption of innocence, and it is replaced with a presumption of guilt." *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996). On appeal, we consider the evidence in the light most favorable to the prosecution to determine whether any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cottingham*, 193 S.W.3d at 538.

As we consider the issue in this case, we are guided by the instruction in *Davidson County v. Randall*, a 1957 case in which our Supreme Court was called upon to determine whether the proof was sufficient to support the trial court's finding of criminal contempt when a property owner was enjoined from selling dirt from his residential property but continued to let a contractor remove the dirt with heavy equipment. The Court observed:

> 'The matter is to be determined, not from a contemporaneous verbal construction of the decree given by the judge, but from the injunction itself, construed in the light of the pleadings and the subject matter of the suit.' 28 Am. Jur., p. 507, Sec. 333. . . .
>
> 'But, while the injunction must be implicitly obeyed, it is the spirit and not the strict letter of the mandate to which obedience is exacted, and complainant failing to prove a violation of this to the satisfaction of the court, the rule for an attachment for contempt will be discharged.' High on Injunctions, 4th Edition, Sec. 1419.

---

[5] The maximum sentence for each act of criminal contempt is ten days of confinement in jail, and the maximum fine is $50. Tenn. Code Ann. § 29-9-103.

In Section 1433 of this work this very reasonable and logical statement is made:

'But where the mandate of the court has been violated in spirit as well as in letter, the court will not permit the general terms of the writ to be controlled or restricted by reference to the particular nature of the grievance. *Nor will the court permit defendants to evade responsibility for violating an injunction by doing through subterfuge that which, while not in terms a violation, yet produces the same effect by accomplishing substantially that which they were enjoined from doing*.' (Emphasis ours).

And at Section 1446 on page 1455, this author very aptly makes the statement which is particularly appropriate in this case.

'In deciding whether there has been an actual breach of an injunction it is important to observe the objects for which the relief was granted, as well as the circumstances attending it. And it is to be observed that *the violation of the spirit of an injunction*, even though its strict letter may not have been disregarded, is a breach of the mandate of the court.' (Emphasis ours).

The author then notes that the opposite of this statement is likewise true, in these contempts for breach of the injunction, to the effect that even though literally an injunction might have been breached if it is not done so in spirit then there is no violation. . . .

300 S.W.2d 618, 620, 621 (Tenn. 1957)

The injunction was issued in this case to ensure that every deed the Defendants filed complied with the statutory filing requirements pertaining to real property documents; the court found that Defendants' registration of forged real estate documents posed substantial risk to the public welfare. The evidence is clear that, after the injunction was issued, Mr. Walker established the All Amp Trust, a revocable trust in which he retained the right to direct the accumulation and distribution of trust assets, and in which Mr. Boykin was named trustee. The corpus of the trust was $250 cash and the Laurenwood Drive property which was conveyed to Mr. Boykin "as Trustee for the All Amp Trust." Pursuant to his positon as trustee, Mr. Boykin was bound to follow Mr. Walker's directions relative to the trust property, including recording the deed conveying that property to the trust and, upon its subsequent sale in March 2016, distributing a portion of the proceeds to pay Mr. Walker's legal fees.[6]

---

[6] The derivation clause of the March 2016 deed states that the property is "the same property conveyed to JAMAAL L. BOYKIN AS TRUSTEE FOR THE ALL AMP TRUST, by deed from SHAPIRO &

Recording the Substitute Trustee's Deed without adhering to the notice requirement of the injunction demonstrated "willful disobedience or resistance" to the injunction, and is directly attributable to Mr. Walker. Tenn. Code Ann. § 29-9-102(3). Taken in its entirety and in context, the proof is beyond a reasonable doubt that Mr. Walker, as settlor of the trust and its sole beneficiary, sought "to evade responsibility for violating an injunction by doing through subterfuge that which, while not in terms a violation, yet produces the same effect by accomplishing substantially that which [he] w[as] enjoined from doing," *Randall*, 300 S.W.2d at 621, i.e., causing a deed to be recorded without adhering to the terms of the injunction. This willful conduct violated the injunction and supports Mr. Walker's conviction of criminal contempt.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

RICHARD H. DINKINS, JUDGE

INGLE, LLP, A TENNESSEE LIMITED LIABILITY PARTNERSHIP, AS SUBSTITUTE TRUSTEE, of record in instrument No. 20160112-0003357, dated December 14, 2015, said Register's Office."